**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                                                          No. 09-CR-03072 MV

GUADALUPE FERNANDO CRUZ-HERNANDEZ,

       Defendant.

**<u>MEMORANDUM OPINION AND ORDER</u>**

**THIS MATTER** is before the Court on Defendant Guadalupe Fernando Cruz-Hernandez'

Opposed Motion for Compassionate Release [hereinafter "2021 Motion for Compassionate

Release"].  Doc. 146.  The 2021 Motion for Compassionate Release was filed to substitute for (1)

Mr. Cruz-Hernandez' *pro se* Motion for Compassionate Release Pursuant to 18 U.S.C.

§ 3582(c)(1)(A)(i) and for Appointment of Counsel Pursuant to 18 U.S.C. § 3006A [hereinafter

"2020 Motion for Compassionate Release"] [Doc. 128],  (2) his *pro se* Emergency Motion for

Judicial Notice Pursuant to Federal Rules of Evidence 201(b) [hereinafter "First Emergency

Motion"] [Doc. 138], and (3) his *pro se* Emergency Request for Judicial Notice Pursuant to Federal

Rules of Evidence 201(b) and Request for Emergency Judgment on Motion for Compassionate

Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) [hereinafter "Second Emergency Motion"] [Doc.

141].  *Id.* at 1.  The Government filed a response [Doc. 151], and Mr. Cruz-Hernandez filed a reply

[Doc. 152].   Both parties then filed Notices of Supplemental Authority.   Docs. 153–154.

Following the Court's Order for additional briefing, Mr. Cruz-Hernandez then filed his Amended

Notice of Additional Briefing.  Docs. 156, 158.  The government then filed a response.  Doc. 161.

       Having carefully considered the briefing, relevant law, and being otherwise fully informed,

the Court finds that: (1) Mr. Cruz-Hernandez' 2020 Motion for Compassionate Release [Doc. 128] is found as **MOOT**; (2) Mr. Cruz-Hernandez' First Emergency Motion [Doc. 138] is found as **MOOT**; (3) Mr. Cruz-Hernandez' Second Emergency Motion [Doc. 141] is found as **MOOT**; and (4) Mr. Cruz-Hernandez' 2021 Motion for Compassionate Release [Doc. 146] is not well taken and will be **DENIED**.

## BACKGROUND

On October 21, 2009, Mr. Cruz-Hernandez was charged by indictment with one count of Conspiracy to Distribute One Kilogram and More of Heroin, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A). Doc. 2. On October 7, 2010, Mr. Cruz-Hernandez pled guilty to the indictment. Doc. 69. On June 23, 2011, Mr. Cruz-Hernandez was sentenced to a term of imprisonment of 240 months, followed by a 5-year term of supervised release. Doc. 115.

On October 30, 2020, Mr. Cruz-Hernandez filed the 2020 Motion for Compassionate Release, seeking a sentence of time served. Doc. 128. On November 2, 2020, the case was reassigned from District Judge M. Christina Armijo to District Judge Judith C. Herrera. Doc. 129. The next day, it was reassigned to District Judge James A. Parker. Doc. 130. On November 9, 2020, Diego R. Esquibel was appointed as attorney for Mr. Cruz-Hernandez. Doc. 133. Mr. Esquibel subsequently filed five motions for extensions to file supplemental pleadings, which were granted. Docs. 134–137, 139–145.

Meanwhile, on December 22, 2020, Mr. Cruz-Hernandez filed the First Emergency Motion on a *pro se* basis, seeking a ruling on his 2020 Motion for Compassionate Release. Doc. 138. On January 11, 2021, Mr. Cruz-Hernandez filed the Second Emergency Motion on a *pro se* basis, again seeking a ruling on his 2020 Motion for Compassionate Release. Doc. 141.

On February 17, 2021, Mr. Cruz-Hernandez, by and through Mr. Esquibel, filed the 2021

Motion for Compassionate Release.  Doc. 146.  He represents that the 2021 Motion for Compassionate Release substitutes for the 2020 Motion for Compassionate Release, as well as the First and Second Emergency Motions.  *Id.* at 1 (citing Docs. 128, 138, 141).  Thus, the Court finds the 2020 Motion for Compassionate Release [Doc. 128], the First Emergency Motion [Doc. 138], and the Second Emergency Motion [Doc. 141] moot on the basis of this representation.

The government filed a response on March 15, 2021, and Mr. Cruz-Hernandez filed a reply on March 29, 2021.  Docs. 151–152.  Both parties then filed Notices of Supplemental Authority. Docs. 153, 154.

On November 4, 2021, the case was randomly reassigned to District Judge Martha Vázquez.  Doc. 155.  This Court then ordered Mr. Cruz-Hernandez to file additional briefing in light of developments in the law as to 18 U.S.C. § 3582(c)(1)(A)(i), which he did.  Docs. 156, 158. The government then filed a response.  Doc. 161.

## STANDARD

Under 18 U.S.C. § 3582(c)(1)(A)(i), federal courts are permitted to reduce a defendant's term of imprisonment and/or modify their conditions of supervised release if, after a consideration of the factors set forth in 18 U.S.C. § 3553(a), "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i).  Prior to the passage of the First Step Act of 2018, only the director of the BOP could move for a reduction under the statute, leaving federal prisoners powerless to apply for compassionate release on their own behalf.  *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (2018).  However, in a section of the Act titled "Increasing the Use and Transparency of Compassionate Release," Congress amended the law to allow defendants to move for sentence reductions under § 3582(c)(1)(A)(i) once they have "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion

on [their] behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.*

A district court may grant a motion for the reduction of a sentence "if three requirements are met: (1) the district court finds that extraordinary and compelling reasons warrant such a reduction; (2) the district court finds that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; and (3) the district court considers the factors set forth in § 3553(a), to the extent that they are applicable." *Maumau*, 993 F.3d at 831.  However, because "the Commission has been unable to comply with its statutory duty of promulgating a post-First Step Act policy statement . . . the Sentencing Commission's existing policy statement is applicable only to motions filed by the Director of the BOP, and not to motions filed directly by defendants." *Id.* at 836–37; *see also United States v. McGee*, 992 F.3d 1035, 1050 (10th Cir. 2021).  Thus, district courts "possess the authority to determine for themselves what constitutes 'extraordinary and compelling reasons,'" on defendant-filed motions, and are not bound by the Commission's current policy statements. *Maumau*, 993 F.3d at 832, 836.

Still, this Court may choose to look to the current policy statement—United States Sentencing Guidelines § 1B1.13—for non-binding guidance. *See United States v. Carr*, 851 F. App'x 848, 853 (10th Cir. 2021) (noting that "it was within the district court's discretion to conclude the application notes to USSG § 1B1.13 still provided the best definition and description of 'extraordinary and compelling reasons' under the circumstances" but that Tenth Circuit case law required the district court to recognize that § 1B1.13 was non-binding and to "exercise its independent authority and discretion.")

"Courts . . . interpret the 'extraordinary and compelling' standard differently.  Most agree, however, that in the context of the current global pandemic, an inmate demonstrates extraordinary

and compelling circumstances if she has serious underlying health conditions that place her at an increased risk of serious illness or death from COVID-19 while incarcerated." *United States v. Morris*, No. 16-20022-3, 2020 WL 5231319, at *3 (D. Kan. Sept. 2, 2020); *see also United States v. Edington*, No. 19-cr-00174-REB-1, 2020 WL 2744140, at *3 (D. Colo. May 27, 2020) ("[T]he dangers presented by the pandemic . . . must be 'compelling' in [the movant's] particular circumstances.").

In determining whether an individual's vulnerability to COVID-19 is serious enough to merit compassionate release, courts often look to guidance from the Centers for Disease Control and Prevention (CDC). *See, e.g.*, *United States v. Avalos*, 856 F. App'x 199, 205 (10th Cir. 2021) (reversing district court's denial of compassionate release because the Tenth Circuit was "unable to conclude . . . that the district court properly applied the CDC guidance available at the time of its decision"); *see also United States v. Kibble*, 992 F.3d 326, 332–33 (4th Cir. 2021) (Gregory, C.J., concurring), *cert. denied*, 142 S. Ct. 383 (2021) (deciding whether an inmate is "at risk" requires "appropriate consideration of the risks identified by public health experts," including the CDC).

There is a growing consensus that COVID-19 vaccination weighs against compassionate release. The Sixth and Seventh Circuits, for example, have held that "for the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release." *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021); *United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021). Neither circuit has entirely foreclosed the possibility that a vaccinated individual could show an extraordinary and compelling vulnerability to COVID-19, acknowledging that some individuals are "unable to receive or benefit from a vaccine." *Broadfield*, 5 F.4th at 803; *Lemons* 15 F.4th at

747.  However, these rulings do underscore the importance of highly individualized compassionate release analysis; it is clear that although vaccination status "reduce[s] [the] likelihood of contracting—or suffering severe complications—from the virus," district courts must continue to "carefully review[] . . . medical records and consider[] . . . arguments for release," when considering whether "the risk [an individual] faces from COVID-19 complications [is] so 'extraordinary and compelling' that release from prison is warranted."  *United States v. Bullias*, No. 21-2268, 2022 WL 1562840, at *2 (7th Cir. May 18, 2022).

The Tenth Circuit has not issued binding guidance on how an individual's vaccination status impacts his or her compassionate release request.  However, in a recent unpublished opinion, the court of appeals reasoned as follows:

> Given the effectiveness of COVID-19 vaccines, we agree with the Sixth and Seventh Circuits that a defendant's incarceration during the COVID-19 pandemic—when the defendant has access to the COVID-19 vaccine—does not present an extraordinary and compelling reason warranting a sentence reduction. We also agree that a prisoner who is unable to receive or benefit from a vaccine may still be able to show extraordinary and compelling reasons warranting a sentence reduction.

*United States v. McRae*, No. 21-4092, 2022 WL 803978, at *2 (10th Cir. Mar. 17, 2022) (unpublished) (cleaned up).  Indeed, vaccination *does* generally reduce one's risk of severe illness or death from COVID-19 infection.  *See COVID-19 Vaccines Work*, Ctrs. for Disease Control & Prevention,  https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/work.html  (last visited Aug. 17, 2022).   However, when a movant shows individualized medical evidence of extraordinary and compelling vulnerability to COVID-19 despite vaccination, or when a movant demonstrates extraordinary and compelling factors beyond medical vulnerability, this Court may grant release.

**DISCUSSION**

Mr. Cruz-Hernandez has satisfied the administrative exhaustion requirement. However, Mr. Cruz-Hernandez has failed to show extraordinary and compelling circumstances justifying a reduced sentence. Accordingly, the Court need not consider the Section 3553(a) factors. *See McGee*, 992 F.3d at 1043 ("[D]istrict courts may deny compassionate-release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others.").

**1. Administrative Exhaustion**

Mr. Cruz-Hernandez has satisfied § 3582(c)(1)(A)'s exhaustion requirement, which provides that a district court may modify a term of imprisonment "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf *or* the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A) (emphasis added). The plain language of § 3582(c)(1)(A) thus allows an inmate to file a motion for compassionate release in federal court thirty days after a warden receives his administrative request for compassionate release—regardless of the warden's response or the pendency of any administrative appeals before the Bureau of Prisons. *See, e.g.*, *United States v. Harris*, 973 F.3d 170, 171 (3rd Cir. 2020); *United States v. Garcia*, No. 17-CR-02242-MV, 2021 WL 258238, at *3–4 (D.N.M. Jan. 26, 2021); *United States v. Haney*, 454 F. Supp. 3d. 316, 321 (S.D.N.Y. 2020); *United States v. Carter*, 469 F. Supp. 3d 583, 587 (S.D.W. Va. 2020).

Mr. Cruz-Hernandez submitted an administrative request for compassionate release to the Warden of FCI Safford on August 2, 2020, which was denied 53 days later on September 23, 2020. Doc. 128 at 19–20. Mr. Cruz-Hernandez subsequently filed the 2020 Motion for Compassionate

Release on October 30, 2020—90 days after filing his administrative request for compassionate release. Doc. 128. He additionally filed the 2021 Motion for Compassionate Release on February 17, 2021—200 days after filing his administrative request for compassionate release. Doc. 146. Given this procedural history, Mr. Cruz-Hernandez has "satisfied the exhaustion requirements set forth in Section 3582(c)(1)(A) before filing the current motion and the motion, therefore, is procedurally proper." *United States v. Smith*, No. 2:13-CR-00776, 2022 WL 1422197, at *3 (D. Utah May 5, 2022); *see also Garcia*, 2021 WL 258238, at *3–4; 18 U.S.C. § 3582(c)(1)(A).

## 2. Extraordinary and Compelling Circumstances

### a. Mr. Cruz-Hernandez' Medical Condition

Mr. Cruz-Hernandez argues that he is at high risk of developing life-threatening COVID-19 complications due to his current medical condition. Doc. 146 at 2. The government responds that his medical condition is not an extraordinary and compelling circumstance justifying his release. Doc. 151 at 9–10. In his Amended Notice, Mr. Cruz-Hernandez provides supplemental medical records and reiterates that his present medical condition justifies his compassionate release in the context of the pandemic. Doc. 158 at 7–10.

The Court turns first to his medical records. Mr. Cruz-Hernandez is a 50-year-old Hispanic male. Doc. 128 at 21. Medical records indicate that Mr. Cruz-Hernandez is 230 pounds, putting his body mass index at 31.2 and his weight status at obese. Doc. 158-1 at 10; *Adult BMI Calculator*, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_calculator/bmi_calcul ator.html (last visited Aug. 17, 2022). Due to the regular shutting down of facilities, Mr. Cruz-Hernandez has been unable to engage in physical activity and has gained weight as a result. Doc. 158 at 1; Doc. 158-1 at 10; Doc. 128 at 53. He has hypertension (high blood pressure), gastro-

esophageal reflux disease (GERD or acid reflux), and other peripheral vertigo. *Id.* at 11. He also has hyperlipidemia and hypercholesterolemia (two types of high cholesterol). *Id.* at 11; Doc. 128 at 28. Additionally, he is at an increased risk of Atherosclerotic Cardiovascular Disease (ASCVD), meaning he is at a higher risk of heart disease and stroke. Doc. 158-1 at 74. With an ASCVD risk score of 5.7%, he is considered a "borderline risk." Doc. 128 at 61; *ASCVD Risk Estimator Plus*, Am. Coll. Cardiology, https://tools.acc.org/ascvd-risk-estimator-plus/#!/calculate/estimate/ (last visited Aug. 17, 2022) (categorizing risk as follows: Low-risk (<5%); Borderline risk (5% to 7.4%); Intermediate risk (7.5% to 19.9%); and High risk (≥20%)). Finally, Mr. Cruz-Hernandez contends that his mental health has declined during the pandemic. Doc. 158 at 2. While the Court credits this assertion, there is little corroborating information in the medical records, which only go through October 2020. *See generally* Doc. 158-1.

The Court turns next to the CDC for guidance. *See Avalos*, 856 F. App'x at 205. The CDC has outlined which medical conditions contribute to more severe illness from COVID-19. *People with Certain Medical Conditions*, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Aug. 17, 2022). Several of Mr. Cruz-Hernandez' medical conditions are on this list. For example, hypertension can "possibly . . . make you more likely to get very sick from COVID-19." *Id.* Obesity "can make you more likely to get very sick from COVID-19." *Id.* "People who do little or no physical activity are more likely to get very sick from COVID-19 than those who are physically active." *Id.* "Older adults are more likely to get very sick from COVID-19," with the "risk increas[ing] for people in their 50s." *COVID-19 Risks and Vaccine Information for Older Adults*, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/aging/covid19/covid19-older-adults.html (last visited Aug. 17, 2022).

"Studies have shown people from racial and ethnic minority groups are also dying from COVID-19 at younger ages," because they "are often younger when they develop chronic medical conditions and may be more likely to have more than one medical condition." *People with Certain Medical Conditions.* Finally, and critically, "[a] person's risk of severe illness from COVID-19 increases as the number of underlying medical conditions they have increases." *Id.*

Additionally, while not listed on the CDC website, a recent study concluded that the "ASCVD risk score may be used to identify those at highest risk for COVID complications," "[w]ith higher risk groups displaying higher prevalence of severe COVID outcomes." Yousif Arif et al., *Relation of 10-Year ASCVD Risk Score with Severe COVID-19 Outcomes*, J. Am. Coll. Cardiology, 79(9):1848 (2022) [hereinafter "*ASCVD-COVID Risk*"]. Likewise, while not listed on the CDC website, a recent study concluded that there was a link between GERD and increased susceptibility for COVID-19 and "a potential causal role" between GERD and the risk of COVID-19 hospitalization. Jue-Sheng Ong, *Assessing the Genetic Relationship between Gastro-esophageal Reflux Disease and Risk of COVID-19 Infection*, Human Molecular Genetics, 31(3):471–80 (2022) [hereinafter "*GERD-COVID Relationship*"].

On the face of this evidence, there can be no question that Mr. Cruz-Hernandez is at high risk of severe illness from COVID-19. His hypertension, obesity, and lack of physical activity all make him "more likely to get very sick from COVID-19." *People with Certain Medical Conditions.* His ethnicity and age—he recently turned 50—are additional risk factors. *Id.* His ASCVD risk and GERD are also correlated with more severe illness from COVID-19. *See ASCVD-COVID Risk*; *GERD-COVID Relationship.* All of these conditions combine to further increase his risk of severe illness from COVID-19. *People with Certain Medical Conditions.* The Court notes that it makes this finding despite the fact that Mr. Cruz-Hernandez is classified at Care

Level 1 by the Bureau of Prisons.   Doc. 158-2 at 5; Federal Bureau of Prisons, *Care Level Classification for Medical and Mental Health Conditions or Disabilities*, 4 (2019) (describing Care Level 1 inmates as "generally healthy," with "limited medical needs that can be easily managed").

However, Mr. Cruz-Hernandez is not defenseless against COVID-19.   He is fully vaccinated and has received a booster shot.   Doc. 158 at 2; Doc. 158-1 at 16, 38.   In fact, his briefing indicates that he may have also received a second booster shot.   Doc. 158 at 2. Additionally, Mr. Cruz-Hernandez contracted and recovered from COVID-19 in December 2020. Doc. 158-1 at 28.   There is no indication that Mr. Cruz-Hernandez had a severe case of COVID-19. *See generally* Doc. 158-1.   He contends that he "has endured continued lingering abdominal pain" as a result and is awaiting further testing to determine the cause of the pain.   Doc. 158 at 2.   Be that as it may, he has some level of immunity from having contracted COVID-19.   *See* Tomás M. León et al., *COVID-19 Cases and Hospitalizations by COVID-19 Vaccination Status and Previous COVID-19 Diagnosis — California and New York, May–November 2021*, Ctrs. for Disease Control & Prevention Morbidity and Mortality Weekly Rep., 71:125–31 (2022) (recognizing so-called "natural immunity" from contracting and recovering from COVID-19).

As discussed *supra*, an incarcerated defendant "who is unable to receive or benefit from a vaccine may still be able to show extraordinary and compelling reasons warranting a sentence reduction."   *McRae*, 2022 WL 803978, at *2.   For example, if Mr. Cruz-Hernandez were immunocompromised, he could demonstrate that he was "at increased risk of severe COVID-19 illness and death," because his "immune response to COVID-19 vaccination may not be as strong as in people who are not immunocompromised."   *COVID-19 Vaccines for People Who Are Moderately or Severely Immunocompromised*, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/recommendations/immuno.html        (last

visited Aug. 17, 2022). However, his medical records do not indicate a history of cancer, organ transplant, use of corticosteroids, or a life-long weakened immune system. *See People with Certain Medical Conditions* (listing causes of an immunocompromised condition). Nor do his medical records otherwise indicate that he is unable to benefit from his vaccination. *See generally* Doc. 158-1.

"Given the effectiveness of COVID-19 vaccines" and Mr. Cruz-Hernandez' failure to show individualized medical evidence of his vulnerability to COVID-19 *despite his vaccination*, the Court cannot find that Mr. Cruz-Hernandez' medical condition is an extraordinary and compelling circumstance justifying a reduced sentence. *McRae*, 2022 WL 803978, at *2; *see also COVID-19 Vaccines Work*. However, to avoid creating a perverse incentive to forego vaccination, this Court emphasizes that in cases where a defendant *can* demonstrate their vulnerability to COVID-19 despite vaccination, compassionate release may still be an available and appropriate remedy.

### b.  Mr. Cruz-Hernandez' Wife's Medical Condition

Mr. Cruz-Hernandez argues that his wife's medical condition qualifies as an extraordinary and compelling circumstance pursuant to the Sentencing Commission's policy statement. Doc. 146 at 9. In his 2021 Motion for Compassionate Release, he argues that his wife, Magali Duran-Cruz, "has serious issues which would normally incapacitate an individual." *Id.* Namely, Mr. Cruz-Hernandez contends that Mrs. Duran-Cruz has suffered at least 2 strokes, pneumonia, blood clots, and was expected to undergo a bypass surgery for her heart. *Id.* at 4. He concedes, however, that his wife continues to work long hours as a beautician and care for her aging mother. *Id.* at 4, 9. He also concedes that "she has some assistance from her 18-year-old-son." *Id.* at 4.

In its response, the government argues that Mr. Cruz-Hernandez "fails to demonstrate he needs to serve as a caregiver" to Mrs. Duran-Cruz, particularly in light of the lack of documentation

provided regarding Mrs. Duran-Cruz' medical condition.  Doc. 151 at 11.

In Mr. Cruz-Hernandez' Amended Notice of Additional Briefing, he writes that Mrs. Duran-Cruz' "future medical outlook is still unknown."  Doc. 158 at 2.  He notes that she underwent a hysterectomy, has not had a stroke in the last year, and is still at high risk of contracting COVID-19 and becoming seriously ill.  *Id.* at 2–3.

Medical records submitted with Mr. Cruz-Hernandez' Amended Notice corroborate these assertions.  *See* Doc. 158-3.  For example, Mrs. Duran-Cruz was hospitalized from August 12 to 20, 2020, after experiencing a pulmonary embolism and ischemic stroke—both of which are caused by blood clots.  *Id.* at 51.  After her release, medical records note that she was a "high risk for falls" and used a walker.  *Id.*  Records also indicate that she had "assistance in the home" and lived with her mother, son, and brother.  *Id.*  Although her gynecologist was aware of a history of ovarian cysts and hyperplasia (a risk factor for uterine cancer), medical records note that they "ha[d] been hesitant to intervene surgically because of [her] anticoagulation [history]."  *Id.* Following a second stroke in December 2020, however, she was scheduled for a total abdominal hysterectomy, which was performed on June 10, 2021.  *Id.* at 24, 35.  Since that time, her health appears to have improved.  For example, medical records no longer reflect issues like chronic blood loss, iron deficiency anemia, chronic dyspnea (shortness of breath), or positional lightheadedness, while her anticoagulation issues, hypertension, and headaches appear to be managed with appropriate medication and behavioral interventions.  *Id.* at 1–16.  Moreover, her mobility has improved, with records showing that swelling has gone down in her legs, and she now works on her feet and exercises 10 to 15 minutes per week.  *Id.* at 6.  Mrs. Duran-Cruz's last visit to the doctor reveals that her chief complaint was paresthesia ("pins and needles" sensation), for which the doctor prescribed folic acid.  *Id.* at 1.  As of at least September 2021, Mrs. Duran-

Cruz has returned to working as a stylist, including taking overnight trips for her work. *Id.* at 6.

The Sentencing Commission's policy statement provides that an extraordinary or compelling reason may result from the "incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." U.S.S.G. § 1B1.13.  There is little case law addressing the definition of "incapacitation"; hence, some courts have turned to a Program Statement published by the Bureau of Prisons that defines incapacitation as "a serious injury, or a debilitating physical illness and the result of the injury or illness is that the spouse . . . is completely disabled, meaning that the spouse . . . cannot carry on any self-care and is totally confined to a bed or chair." *United States v. Collins*, No. 15-10188-EFM, 2020 WL 136859, at *4 (D. Kan. Jan. 13, 2020).

While neither the BOP's Program Statement nor the Sentencing Commission's policy statement is binding on this Court, these statements persuade the Court that Mrs. Duran-Cruz' present medical condition is not an extraordinary and compelling circumstance justifying Mr. Cruz-Hernandez' release. *See Carr*, 851 F. App'x at 853.  Based on Mrs. Duran-Cruz' improving health, as well as the fact that she is able to work and care for her mother, the Court finds that she is not incapacitated. *See Collins*, 2020 WL 136859, at *4.  Additionally, because Mrs. Duran-Cruz has "assistance in the home," the Court finds that Mr. Cruz-Hernandez is not her "only available caregiver." *See* U.S.S.G. § 1B1.13; Doc. 158-3 at 51.  Accordingly, although the Court regrets Mr. Cruz-Hernandez' absence from his wife's side during her strokes and hysterectomy, the Court cannot conclude that her current medical condition justifies a reduced sentence.

### c.  Mr. Cruz-Hernandez' Mother-in-Law's Medical Condition

Mr. Cruz-Hernandez contends that his mother-in-law, Eva Duran, "has taken a turn for the worse" in recent months.  Doc. 158 at 3.  As a result, he notes that his wife is serving as primary

caretaker for his mother-in-law. *Id.* Medical records indicate that Ms. Duran's left great toe was recently amputated due to gangrene that developed as a result of uncontrolled Type 2 diabetes mellitus. *See, e.g.*, Doc. 158-4 at 4. Ms. Duran developed a subsequent infection at the site of the amputation, but records indicate that a nurse providing home health care has managed the wound well enough that her medical providers "were not concerned about [the] continued infection." *Id.* at 1. While Ms. Duran's diabetes is serious and complicated by critical limb ischemia, which markedly reduces blood flow in the legs, records indicate that she "does not have [the] resources to pay for synthetic insulin," which is the "preferred" treatment for her condition. *Id.* at 22. Ms. Duran also has hypertension. *Id.* at 1.

To the extent that Mr. Cruz-Hernandez proffers this information to justify a reduction in his sentence, the Court finds the argument unavailing.[1] Admittedly, Ms. Duran may be incapacitated given that she is "basically immobile" while the site of her toe amputation heals. Doc. 158 at 5; *Collins*, 2020 WL 136859, at *4. Nevertheless, her poor health does not justify a reduced sentence for Mr. Cruz-Hernandez, because Ms. Duran already has a primary caretaker. *See* Doc. 158 at 5 (conceding that Mr. Cruz-Hernandez' wife is Ms. Duran's "primary caretaker"); Doc. 158-4 at 1 (mentioning Mr. Cruz-Hernandez' wife's role in Ms. Duran's care). Additionally,

---

[1] The Commission's policy statement provides that family circumstances may constitute extraordinary and compelling reasons to justify to a sentence reduction in two circumstances. U.S.S.G. § 1B1.13 cmt. n.1(C). Namely, a reduced sentence may be justified based on (1) "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children," or (2) "[t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." *Id.* The policy statement does not address the incapacitation of the *parent* of a defendant's spouse or registered partner. *Id.* As discussed *supra*, district courts "possess the authority to determine for themselves what constitutes 'extraordinary and compelling reasons,'" on defendant-filed motions, and are not bound by the Commission's current policy statements. *Maumau*, 993 F.3d at 832, 836. Hence, although Mr. Cruz-Hernandez does not lay out this argument explicitly, this Court has the authority to and will consider whether the incapacitation of Mr. Cruz-Hernandez' mother-in-law constitutes an extraordinary and compelling reason to justify a sentence reduction.

medical records indicate that a home health care nurse visits Ms. Duran twice a week to provide additional care. Doc. 158-4 at 1. While this arrangement almost certainly interferes with Mr. Cruz-Hernandez' wife's ability to earn an income, Mr. Cruz-Hernandez concedes that their 18-year-old son provides her with financial assistance. Doc. 146 at 4. Thus, although additional support would no doubt be beneficial, the Court cannot conclude that Mr. Cruz-Hernandez is the "only available caregiver" for Ms. Duran. U.S.S.G. § 1B1.13 cmt. n.1(c); *see also United States v. Lopez*, No. 17-10157-EFM 2021 WL 274518, at *2 (D. Kan. Jan. 27, 2021), *aff'd*, 846 F. App'x 733 (10th Cir. 2021) (denying a defendant's request for compassionate release to care for his father when defendant's mother and sister could also presumably serve as a caretaker). Accordingly, while the Court finds the situation highly sympathetic, the Court cannot find that Ms. Duran's medical condition constitutes an extraordinary and compelling circumstance justifying Mr. Cruz-Hernandez' release.

### d. Mr. Cruz-Hernandez' Rehabilitation

Mr. Cruz-Hernandez' rehabilitation is both remarkable and commendable. There is no record of disciplinary incidents during his time at a low-level security facility, and Mr. Cruz-Hernandez is considered a low risk of recidivism. Doc. 158 at 4, 6; Doc. 158-2 at 6. Since 2013, he has completed twenty-seven classes, including earning his General Equivalency Degree in 2016. Doc. 158 at 3; Doc. 158-2 at 5. Additionally, Mr. Cruz-Hernandez' supervisor, M. Flores, provided an extraordinary letter of support, in which he writes:

> Guadalupe [Cruz-Hernandez] was hired to FCI-Safford Commissary on June 12th 2021. Cruz-Hernandez has shown dedication to his job working at FCI Safford on a daily basis. Cruz-Hernandez arrives to work early everyday with the will to learn and accomplish daily task[s]. He has learned many skills such as safety and sanitation procedures issued through training implemented by staff. Cruz-Hernandez has shown a respectful and professional appearance while working inside of Commissary. He has volunteered to translate Spanish for the general population assisting staff with communication barriers.

16

> He has learned many skills such as management, projection of future orders, rotating merchandize [sic], and documentation of damage[d] goods.  His overall work performance has been greatly appreciated and has shown great leader ship [sic] through work ethics and communication earning himself pay bonuses.

Doc. 158-5.

Regrettably, this Court cannot grant compassionate release on this basis.  "'Rehabilitation of the defendant alone,' Congress has stated, 'shall not be considered an extraordinary and compelling reason.'"  *McGee*, 992 F.3d at 1043 (quoting 28 U.S.C. § 994(t)).  Accordingly, because this Court has found not other extraordinary and compelling circumstances, this Court is statutorily bound to find that while Mr. Cruz-Hernandez' rehabilitation *is* extraordinary and compelling, it is not an extraordinary and compelling reason to justify a reduced sentence.

## CONCLUSION

For the reasons stated above, (1) Mr. Cruz-Hernandez' 2020 Motion for Compassionate Release [Doc. 128] is found as **MOOT**; (2) Mr. Cruz-Hernandez' First Emergency Motion [Doc. 138] is found as **MOOT**; (3) Mr. Cruz-Hernandez' Second Emergency Motion [Doc. 141] is found as **MOOT**; and (4) Mr. Cruz-Hernandez' 2021 Motion for Compassionate Release [Doc. 146] is hereby **DENIED**.


ENTERED this 19th day of August 2022.

_____
MARTHA VAZQUEZ
SENIOR UNITED STATES DISTRICT JUDGE

17